# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| THEODIS HOLMES, | ) |
| Petitioner, | ) ) ) |
| v. | ) No. 4:19-CV-00224 JAR ) |
| RICHARD JENNINGS, | ) ) |
| Respondent. | ) ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Theodis Holmes's pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 1), as amended (Doc. No. 16, 17). The State responded (Doc. No. 19). No reply was filed, and the time for doing so has passed. For the following reasons, Petitioner's petition is **DENIED** and this action is **DISMISSED**.

### I.     Background

On March 19, 2014, following a jury trial, Holmes was convicted of first-degree murder and armed criminal action. He was sentenced on June 13, 2014 to consecutive sentences of life imprisonment without the possibility of parole for murder and thirty years imprisonment for armed criminal action. Holmes filed a direct appeal of his conviction and sentence, arguing that the trial court erred by admitting into evidence, and providing to the jury during deliberations, State's Exhibit 2, a video presentation condensing State's Exhibit 1A, a video surveillance recording of the crime. The Missouri Court of Appeals for the Eastern District affirmed the judgment in an unpublished opinion. Holmes v. State, 477 S.W.3d 658, 659 (Mo. Ct. App. 2015).

In its order affirming Holmes's conviction, the Missouri Court of Appeals described the underlying facts as follows:

On February 27, 2011, Terry Lee Warren, Jr. ("Warren") and Defendant entered Px Liquor Store to buy liquor. Upon entering, Warren encountered an acquaintance, Larry Strong ("Strong") who was wearing a jacket with an Ohio Bobcats logo printed on the back. Warren and Strong exited the store to continue their conversation.

While inside the store, Defendant got into a verbal altercation with another customer, Stephen Ward ("Victim"), about his place in line. After the altercation, Defendant exited the store. Warren observed the Defendant exit the store and approach the passenger side of their car. Defendant reached into the glove box and then walked back inside the store, followed by Warren. Immediately upon entering, Defendant fired two shots at Victim with a 9mm gun, resulting in Victim's death. Defendant and Warren immediately exited the store, got inside the car, and drove away.

Detective Charles Betts ("Detective Betts") was assigned to investigate the shooting. Through his investigation, Detective Betts learned Px Liquor Store operated a surveillance system which was recorded as part of the ordinary course of business. Detective Betts obtained a copy of the surveillance footage, Exhibit 1A, which consisted of recordings from three cameras. The recordings were each approximately an hour long. Initially, Detective Betts focused on an individual in the video wearing a jacket with a unique logo. Detective Betts prepared a short video presentation, Exhibit 2, containing excerpts of the surveillance video with subtitles and disseminated it to other officers, hoping that someone could identify the logo on the jacket and suspects in the video.

Upon receiving Detective Betts's email containing a link to the video presentation and several still pictures taken from the original videos, Officer Nijauh Woodard recognized the logo on the jacket as the Ohio University Bobcats. Later, Officer Woodard observed a similar jacket at a restaurant and learned from the owner of the restaurant that the jacket belonged to an employee, Strong. Officer Woodard forwarded this information to Detective Betts.

Detective Betts subsequently interviewed Strong who identified Warren as the individual he had met inside the liquor store on the night of the crime. Based on this information, Detective Betts interviewed Warren who identified Defendant as the person who shot Victim. Defendant had fled the state but was eventually apprehended by the U.S. Marshal Service.

At trial, while Exhibit 1A was being played for the jury, Detective Betts testified as to why certain portions of the video were significant to his investigation. Detective Betts also explained each segment of the surveillance video, what he

2

> had done in his investigation, and how his investigation led to the eventual arrest of Defendant. Detective Betts also testified he had condensed Exhibit 1A into a short video presentation which he disseminated to other officers. The video presentation was admitted into evidence as Exhibit 2 over defense counsel's objection, but was not played for the jury.
>
> During deliberations, the jury asked to "see the videos, mug shot of [Defendant], all pictures, department email from [Detective Betts]." In response, the jury was provided with the requested evidence, including Exhibit 1A and Exhibit 2. The jury ultimately found Defendant guilty of the class A felony of murder in the first degree and the unclassified felony of armed criminal action.

(Doc. No. 19-6 at 3-5).

Holmes thereafter filed a motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15. In his motion, Holmes alleged his trial counsel was ineffective for (1) failing to object to sending State's Exhibit 2 back to the jury during their deliberations; and (2) failing to request that Juror Number 5, who had been sleeping during the trial, be replaced by an alternate juror. Following an evidentiary hearing, the circuit court denied Holmes's motion. The Missouri Court of Appeals affirmed the denial. Holmes v. State, 551 S.W.3d 101 (Mo. Ct. App. 2018).

Holmes is currently incarcerated at the Potosi Correctional Center, in Mineral Point, Missouri. In his original § 2254 Petition, Holmes raises two grounds for relief:

(1) Counsel was ineffective for failing to object when the trial court allowed the jury to view State's Exhibit 2 during deliberations (Doc. No. 1 at 4); and

(2) Counsel was ineffective for not asking the trial court to remove Juror Number 5 after the State caught the juror sleeping at trial (id. at 5).

In his amended motion, Holmes alleges the trial court erred in admitting State's Exhibit 2 into evidence. (Doc No. 16 at 3-6). Respondent argues that this new claim of trial court error is both untimely and without merit. (Doc. No. 19 at 1-2).

**II.     Standard of review**

3

Pursuant to 28 U.S.C. § 2254, a district court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a). "[I]n a § 2254 habeas corpus proceeding, a federal court's review of alleged due process violations stemming from a state court conviction is narrow." Anderson v. Goeke, 44 F.3d 675, 679 (8th Cir. 1995). Federal courts may not grant habeas relief on a claim that has been decided on the merits in State court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). "A state court's decision is contrary to … clearly established law if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision … and nevertheless arrives at a [different] result." Cagle v. Norris, 474 F.3d 1090, 1095 (8th Cir. 2007) (quoting Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003)). A State court "unreasonably applies" federal law when it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Williams v. Taylor, 529 U.S. 362, 407 (2000). A State court decision may be considered an unreasonable determination "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." Ryan v. Clarke, 387 F.3d 785, 790-791 (8th Cir. 2004) (citing 28 U.S.C. § 2254(e)(1)).

4

A State court's factual findings are presumed to be correct. 28 U.S.C. § 2254(e)(1); Wood v. Allen, 558 U.S. 290, 293 (2010). Review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011). Clear and convincing evidence that State court factual findings lack evidentiary support is required to grant habeas relief. 28 U.S.C. § 2254(e)(1); Wood, 558 U.S. at 293.

### III.     Ineffective assistance of counsel

To prevail on an ineffective assistance of counsel claim, a criminal defendant must demonstrate both that counsel's performance was deficient, and that counsel's deficient performance prejudiced the defense. Anderson v. United States, 393 F.3d 749, 753 (8th Cir.), *cert. denied,* 546 U.S. 882 (2005); Strickland v. Washington, 466 U.S. 668, 687-88 (1984). To establish the deficient performance prong of the Strickland test, one must show that counsel's representation fell below the "range of competence demanded of attorneys in criminal cases." Strickland, 466 U.S. at 688. Review of counsel's performance is highly deferential, and there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Id. at 689. Moreover, "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." United States v. Rice, 449 F.3d 887, 897 (8th Cir. 2006) (quoting Strickland, 466 U.S. at 690). Courts also seek to "eliminate the distorting effects of hindsight" by examining counsel's performance from counsel's perspective at the time of the alleged error. Carter v. Hopkins, 92 F.3d 666, 671 (8th Cir. 1996).

To establish the prejudice prong of the Strickland test, one must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." Anderson, 393 F.3d at 753-54 (quoting Strickland, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. When determining if prejudice exists, the court "must consider the totality of the evidence before the judge or jury." Id. at 695; Williams v. United States, 452 F.3d 1009, 1012–13 (8th Cir. 2006).

A court need not even determine whether a movant meets the "performance" prong of the Strickland test because both the United States Supreme Court and the Eighth Circuit Court of Appeals have noted that "'[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, *which we expect will often be so*, that course should be followed.'" Young v. Bowersox, 161 F.3d 1159, 1160 (8th Cir. 1998 ); see also Kingsberry v. United States, 202 F.3d 1030, 1032 (8th Cir.) (if the petitioner makes an insufficient showing on one component, the court need not address both components), *cert. denied*, 531 U.S. 829 (2000).

Federal habeas review of an ineffective assistance of counsel claim is "doubly deferential." Knowles v. Mirzayance, 556 U.S. 111 (2009); Williams v. Roper, 695 F.3d 825, 831 (8th Cir. 2012). First, a petitioner must overcome the high bar of Strickland by showing that (1) counsel's performance fell below an objective standard of reasonableness; and (2) petitioner was sufficiently prejudiced such that "the result of the proceeding would have been different." Id. at 688, 694. Second, under 28 U.S.C. § 2254, petitioner must show that the state court's adjudication of his ineffective assistance claim was "unreasonable." Harrington v. Richter, 131 S. Ct. 770, 788 (2011).

**IV.    Discussion**

**Ground 1**

In Ground 1 of his original petition, filed February 13, 2019, Holmes alleges his trial counsel was ineffective for failing to object when the trial court allowed the jury to view State's Exhibit 2 during deliberations. In his amended petition, filed January 9, 2020, Holmes further alleges the trial court erred in admitting State's Exhibit 2 and allowing the jury to view it. In his response to this Court's order to show cause, Respondent argues this is a new claim, and as such is untimely, having been raised for the first time in Holmes's traverse filed July 15, 2019 (Doc. No. 13), some 429 days after the statutory deadline set by AEDPA, see 28 U.S.C. § 2244(d)(1). (Doc. No. 19 at 11-12).

Claims in an amended habeas petition filed after the expiration of the limitations period may not be considered if they do not "relate back" to the date of the original habeas petition. Mayle v. Felix, 545 U.S. 644, 655 (2005) (discussing an amended petition under prior Federal Rule of Civil Procedure 15(c)(2), the predecessor of what is now Rule 15(c)(1)(B)); accord McKay v. Purkett, 255 F.3d 660 (8th Cir. 2001) (per curiam) (same). To relate back in federal habeas proceedings, the amended claims must be of the same "time and type" as the original claims, and the original and amended claims must be "tied to a common core of operative facts." Mayle, 545 U.S. at 650, 664. In Mayle, the Supreme Court specifically held that "[a]n amended habeas petition ... does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." Mayle, 545 U.S. at 650.

It is clear from the Court's review of Holmes's petition, his amended petition, and his state court filings, that – giving Holmes's claims the broadest possible review – he has presented similar claims for relief all along, and that the claims in the amended petition share the same core of operative facts as the claims from the initial petition. The Court concludes that Holmes's

7

claim of trial court error is not untimely. In any event, all of Holmes's claims fail on the merits, as discussed below.

At trial, the State moved to admit Exhibit 2 into evidence, describing it as a condensed version of State's Exhibit 1A, which had previously been admitted into evidence and shown to the jury. (Doc. No. 19-1 at 285-87). Exhibit 2 contained no verbal commentary or narration, but included six subtitles with accurate still images of Exhibit 1A as follows:

1. The two suspects clad in white shirts enter the business.
2. One of the suspects shakes hands with one of the unknown witnesses.
3. Note the distinctive design on the back of the witness' jacket.
4. A verbal altercation ensues between the victim and one of the suspects.
5. Note the suspect's yellow hat, insignia on the left upper arm of his shirt, his braids which were pulled to the back of his head, and his facial hair.
6. After the shooting, the suspects fled in a dark colored two-door vehicle believed to be a Chevrolet Camaro.

(Id. at 287). Trial counsel objected on the grounds that the video was irrelevant. (Id. at 285). The trial court overruled counsel's objection and admitted the exhibit. (Id. at 287). The State did not show State's Exhibit 2 to the jury during trial. During deliberations, the jury asked to view all of the video evidence, and trial counsel told the court to "give them everything."  (Id. at 405). Without objection, the trial court then provided the jury with all of the evidence, including State's Exhibit 2. (Id. at 406-07).

On direct appeal, Holmes challenged the admissibility of State's Exhibit 2 as well as the trial court's provision of the exhibit to the jury during deliberations. Finding Holmes had failed to preserve these claims for appellate review, the Missouri Court of Appeals proceeded to review the claims for plain error. (Doc. No. 19-6 at 5-6). In disposing of these claims, the appellate court found Exhibit 2 was relevant to show subsequent police conduct and how the police investigation subsequently led to the apprehension of Holmes as the suspect. (Id. at 8). The appellate court

further found the State had established sufficient foundation for Exhibit 2 through the testimony of the owner of Px Liquor Store and Detective Betts. (Id.). The court rejected Holmes's argument that Exhibit 2 did not accurately portray the crime scene, finding that the images in Exhibit 2 were taken directly from Exhibit 1A without any distortion and accurately depicted excerpts in the same chronological order as they appeared in Exhibit 1A. (Id. at 8-9). The court noted that while the sixth subtitle added new information because it speculated as to the make and model of the car which appeared in Exhibit 1A, the prejudicial impact of that information was "minimal" because the "make and model of the car did not play any role throughout the investigation or trial." (Id. at 9 n.5). Thus, the appellate court declined to review Holmes's claims for plain error, finding that:

> Exhibit 2 was cumulative of other evidence that was admitted without objection through Detective Betts, establishing essentially the same facts. Therefore, the prejudicial effect, if any, was outweighed by the probative value of the exhibit. Giving deference to the trial court's superior position to balance the probative value and prejudicial effect of evidence, we cannot say the trial court abused its discretion, let alone plainly erred, in admitting Exhibit 2 into evidence. Accordingly, Defendant failed to establish on its face substantial grounds for believing that a miscarriage of justice or a manifest injustice had occurred when the trial court admitted Exhibit 2 into evidence.

(Id. at 9-10). The determination that there was no trial court error is neither contrary to nor an unreasonable application of clearly established federal law. Nor did this determination result in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2).

As for Holmes's claim of ineffective assistance of counsel, during the post-conviction evidentiary hearing, his trial counsel recalled objecting to the introduction of State's Exhibit 2 for the following reasons: First, Detective Betts's testimony that "it was very very clear to me who the shooter was and there is no doubt in my mind[ ]" allegedly invaded the province of the

jury because the jurors must decide whether something was "clear" on the video. (Doc. No. 19-8 at 11-12; Doc. 19-1 at 280-81). Second, Exhibit 2 was essentially Detective Betts's interpretation of an exhibit that had already been introduced – Exhibit 1A – and was "obviously damaging." (Doc. No 19-8 at 12-14). Counsel admitted he did not object when the jury asked to see all of the video evidence during deliberations, because "the judge was going to send it up because it had been admitted, and I guess I could have preserved it for appeal, but I didn't think it was going to be much of an appellate issue." (Id. at 15). In addition, trial counsel reasoned that Exhibit 2 was cumulative evidence such that admitting it would have been harmless error. (Id. at 20).

The motion court denied Holmes's motion, finding no grounds upon which an objection to the evidence requested by the jury would have been sustained and no prejudice to Holmes from the jury viewing evidence which had been admitted at trial, particularly given the overwhelming evidence in favor of the State. (Doc. No. 19-7 at 55-56).

The Missouri Court of Appeals affirmed the motion court's denial, finding Holmes had failed to prove any prejudice from the jury's viewing of State's Exhibit 2 during deliberations because it was cumulative of other evidence the State had presented at trial (Doc. No. 19-12 at 10), and because none of the statements in State's Exhibit 2 unduly emphasized Detective Betts's testimony or incorporated information that the jury could not have gathered from viewing State's Exhibit 1A, (id. at 11). Thus, Holmes was unable to demonstrate that his trial counsel's actions prejudiced him, particularly given the substantial evidence against him. The appellate court wrote:

> We are confident that even if trial counsel had successfully prevented the submission of State's Exhibit 2 to the jury for deliberations, the jury still would have found Holmes guilty of first-degree murder and armed criminal action. Between the testimonies of the two witnesses' inside the liquor store, Strong, and Warren, the State painted a clear picture of Holmes shooting Victim. Det. Betts's testimony simply filled in the gaps and explained State's Exhibit 1A's contents

10

and his subsequent investigation leading to Holmes's arrest. State's Exhibit 2 merely condensed State's Exhibit 1A and reiterated Det. Betts's clarifications. In light of the facts, we find that the jury's review of State's Exhibit 2 during its deliberations did not prejudice Holmes.

(Id. at 12-13) (internal citations omitted).

Because Holmes failed to prove prejudice under Strickland, the appellate court found it unnecessary to address whether trial counsel had clearly erred in not objecting or whether the proposed objection was meritorious. (Doc. No. 19-12 at 8). This determination is neither contrary to nor an unreasonable application of clearly established federal law. See Young, 161 F.3d at 1160. Nor did this determination result in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2). Accordingly, Ground 1 is denied.

**Ground 2**

In his second ground for relief, Holmes alleges his trial counsel was ineffective for failing to request that Juror Number 5, who was noticed sleeping during trial, be replaced with an alternate juror. Holmes unsuccessfully raised this claim in his post-conviction relief motion and the Missouri Court of Appeals affirmed the motion court's denial, finding counsel had exercised reasonable trial strategy in not seeking to remove the juror in question.

During trial counsel's cross-examination of the chief medical examiner, the State notified the trial court that Juror Number 5 was sleeping. The following exchange took place at the bench:

> STATE: Your Honor, I observed one of the jurors to be sleeping. I'm asking the Court to ask everybody to take a minute to stretch.
> TRIAL COUNSEL: Can I ask which juror?
> STATE: Yeah. Sure. It would be Juror No. 5. Second row to the left.
> TRIAL COURT: Okay.
> STATE: I figured it was worth interrupting your cross if he was going to listen to it.

11

> TRIAL COUNSEL: It was a boring cross anyway.
> (The proceedings returned to open court.)
> TRIAL COURT: Anybody need to stretch for a moment? Take a nice stretch. Very good.

(Doc. No. 19-1 at 253-54). Thereafter, trial counsel resumed his cross-examination.

At Holmes's post-conviction evidentiary hearing, Holmes testified that he had observed a few of the jurors nodding and sleeping during trial and told his counsel, but that counsel took no action. (Doc. No. 19-8 at 23-27). Counsel explained that he did not ask to remove Juror Number 5 and replace him with an alternate:

> Because I hadn't noticed they were sleeping, and the reason I sit where I do in trial usually is so I can keep an eye on the jury so that I can see from their facial expressions and stuff which points are being made that they consider important that will help me in my cross-examination. I hadn't noticed anyone sleeping.
>
> So if they began sleeping, it had to occur during my cross-examination. And so I figured that – and it was in the corner which I didn't think was particularly an important witness for the defense, and I would continue to watch that juror and if they continued to sleep I would have made a motion.

(Id. at 8-9). The motion court denied Holmes's motion, finding him not credible (Doc. No. 19-7 at 55), and concluded that counsel had not acted unreasonably in failing to request that the sleeping juror be removed (id. at 57). The court explained that a temporary lapse of attention is not grounds for removing a juror and that the decision not to strike a sleeping juror is often a sound trial strategy. (Id.).

The Missouri Court of Appeals affirmed the denial, finding counsel's strategic choice not to move for Juror Number 5's removal fell within the range of professional competence assistance under Strickland. The appellate court wrote:

> Here, Juror No. 5 experienced a temporary lapse of attention. Trial counsel did not move to replace Juror No. 5 because he had not seen the juror sleeping. Further, after the State notified trial counsel of the sleeping juror, trial counsel

12

> was determined to watch the jurors critically for further indiscretions. None occurred.
>
> We note trial counsel's statement during the evidentiary hearing: trial counsel would have moved to replace Juror No. 5 if he observed the juror sleeping again. Trial counsel strategically watched the jury for facial expressions and body language to develop more effective cross-examination techniques throughout the trial. After the State notified trial counsel of Juror No. 5's indiscretion, trial counsel continued to observe all of the jurors closely. Trial counsel was positioned in an ideal location to observe the jurors. We are confident that trial counsel would have noticed any further juror indiscretions. Moreover, trial counsel then returned to the questions he had been asking the witness when the prosecutor brought the juror's sleeping to the trial court's attention. We refuse to second guess trial counsel's reasonable trial decision.

(Doc. No. 19-12 at 13-14).

The Court again finds the state court's decision did not involve an unreasonable application of clearly established federal law and is not based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Nothing in the record demonstrates that Juror Number 5 did not hear all of the evidence presented at trial. To the extent the juror appeared to have been sleeping during trial counsel's cross-examination, the State brought the matter to the court's attention after counsel had posed two questions of the medical examiner. The court gave the jurors an opportunity to stretch and then Holmes's counsel resumed cross-examination, repeating the theme of his two prior questions. (Doc. No. 19-1 at 254). In light of these circumstances, Holmes has failed to demonstrate that the jury was incapable of deliberating and reaching a fair verdict. See, e.g., United States v. Wilcox, 50 F.3d 600, 603 (8th Cir. 1995). Holmes has thus failed to show that counsel's failure to remove the sleeping juror resulted in prejudice and, as such, cannot demonstrate that his counsel was ineffective. The state court's decision is entitled to deference and Ground 2 is, therefore, denied.

**V.     Conclusion**

For these reasons, Holmes has not shown an entitlement to habeas relief on any of the grounds asserted in his petition.

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Theodis Holmes's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 [1], as amended [16] is **DENIED.**

**IT IS FURTHER ORDERED** that because Petitioner cannot make a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability. See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997), *cert. denied*, 525 U.S. 834 (1998).

A separate judgment will accompany this Memorandum and Order.

Dated this 14th day of April, 2021.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**